OPINION
{¶ 1} Defendant-appellant Raymond Lashley, Jr. appeals his conviction and sentence in the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 {¶ 2} On February 18, 2004, the Stark County Grand Jury indicted appellant, Raymond Lashley, Jr., on two counts of felonious assault in violation of R.C. 2903.11 with firearm specifications and specifications appellant discharged a firearm at peace officers, and one count of having weapons while under disability in violation of R.C. 2923.13. Said charges arose from an incident wherein appellant fired a weapon at police officers responding to a call of a possible overdose in the area.
 {¶ 3} On March 23, 2004, the state filed a motion in limine to prevent appellant from introducing psychological records to prove his predisposition to commit suicide. A hearing was held on April 9, 2004. Appellant argued he did not intend to harm the police officers; his intent was to harm himself. By judgment entry filed April 26, 2004, the trial court granted the State's motion, in part, prohibiting appellant from introducing the psychological records.
 {¶ 4} A jury trial commenced on May 5, 2004. The jury found appellant guilty of the weapons charge, but was unable to reach a verdict on the felonious assault counts. A mistrial was declared as to those charges and a second trial was scheduled.
 {¶ 5} On May 25, 2004, appellant filed a motion to suppress and/or in limine, claiming the state failed to preserve a vehicle marked with bullet holes; therefore, any evidence relating to bullet holes should be excluded. A hearing was held on May 28, 2004. Via Judgment Entry filed June 2, 2004, the trial court denied the motion.
 {¶ 6} The second trial commenced on June 29, 2004. The jury found appellant guilty of both felonious assault counts with the specifications. Via Judgment Entry filed July 7, 2004, the trial court sentenced appellant to an aggregate term of fifteen years in prison.
 {¶ 7} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 {¶ 8} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE STATE OF OHIO'S MOTION IN LIMINE, THEREBY PRECLUDING DEFENDANT FROM PRESENTING EVIDENCE OF PREVIOUS SUICIDE ATTEMPTS, PSYCHOLOGICAL EVIDENCE AS WELL AS EVIDENCE THE CURRENT `SUICIDE BY COP' ATTEMPT."
 {¶ 9} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANT'S MOTION TO SUPPRESS AND/OR LIMINE, AS WELL AS DENYING DEFENDANT'S REQUEST TO PRODUCE AND PRESERVE EVIDENCE."
 {¶ 10} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT ALLOWING DEFENDANT TO QUESTION THE STATE'S WITNESSES AS TO THEIR FAILURE TO SECURE AND PRESERVE EVIDENCE."
 {¶ 11} "IV. DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 12} The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987),31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 13} Appellant argues he should have been permitted to offer evidence of "suicide by cop" to refute the requisite element of "knowingly" in the felonious assault charges. Appellant wanted to prove he intended to harm himself via prior suicide attempts. The State argues appellant's "suicide by cop" defense is nothing more than a "diminished capacity" defense; therefore, not recognized in Ohio in non-capital cases.
 {¶ 14} We disagree with appellee's argument appellant's "suicide by cop" theory equates to a "diminished capacity" defense. Appellant does not assert he lacks the mental capacity necessary to form the specific mental state. Rather, appellant argues he, in fact, had the capacity to form the requisite mental state (knowingly), but did not form or have that intent. Neither does appellant assert his mental state on the date in question results in the reduction of the offense to a lesser penalty. Instead, appellant asserts a complete defense to felonious assault asserting he had no intent to commit the offense.
 {¶ 15} The trial court's April 26, 2004 Judgment Entry granting the State's motion in limine states:
 {¶ 16} "After Hearing the argument of counsel and the Court asking questions, the Court ruled from the bench granting the Motion in Limine, which precludes the admission of any testimony or direct evidence relating to the Defendant's alleged suicide attempts and/or psychiatric medical treatment.
 {¶ 17} * * *
 {¶ 18} "For the reasons stated on the record, the Court does rule that statements made by the Defendant on the day in question during the standoff situation and after he had been taken into custody are proper subjects for direct and cross-examination. However, the Court rules that statements made by the Defendant prior to the date in question are not to be the subject of direct or cross-examination."
 {¶ 19} We conclude the trial court did not abuse its discretion in granting the State's motion in limine relative to appellant's past suicide attempts and psychiatric medical treatment. While such evidence may be relevant, the trial court would not have abused its discretion in determining the probative value of any such evidence is minimal, given its decision to allow evidence about appellant's actions and statements relative to suicide on the date of the incident.
 {¶ 20} At the first trial in this matter, testimony was presented demonstrating appellant had asked the police to shoot him during the standoff situation. Tr. at 2722-73, 295, 301. Detective Johnson testified, during his interview with appellant after the incident, appellant admitted to taking pills and wine, and previously having tried to hang himself. Tr. at 423-424. However, appellant's counsel chose not to present the same evidence at the second trial, despite its introduction at the first. Based upon counsel's apparent decision not to present the evidence as to appellant's statements and actions on the date of the incident during retrial, despite their previous introduction at the first trial, appellant cannot now claim prejudice in the trial court's granting the State's motion in limine as to prior suicide attempts. Therefore, appellant's first assignment of error is overruled.
 II, III {¶ 21} Appellant's second and third assignments of error raise common and interrelated issues; therefore, we address the assignments together. Appellant claims the trial court erred in denying his motion to suppress any evidence regarding bullet holes in a vehicle ["Celebrity"]. Appellant also sought to preserve evidence, namely the vehicle, for independent testing. Finally, appellant claims the trial court erred in denying him the opportunity to question the State's witnesses on the preservation issue. We disagree.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; Statev. Klein (1991), 73 Ohio App.3d 485; State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623;Guysinger. As the United States Supreme Court held in Ornelasv. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 23} In Arizona v. Youngblood (1988), 488 U.S. 51, 57-58, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by a state's failure to preserve evidence:
 {¶ 24} "The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady [v. Maryland (1963), 373 U.S. 83], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it,i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."
 {¶ 25} In his appellate brief at 4-5, appellant argues the production of the vehicle for his inspection was important because a photograph depicting a cracked window allegedly from a bullet shot by appellant was presented at trial, and as the police officers "were standing directly in front of this vehicle, and the existence of this single `hole' was the only alleged evidence of a shot being fired toward the officers, it became critical to both the prosecution as well as the defense." In denying appellant's motion to exclude any evidence of bullet holes in the vehicle, the trial stated the following:
 {¶ 26} "No one can say at this point in time what in the examination of the Celebrity would have revealed beyond the testimony which has already been had and which the Court anticipates would be developed in the same manner at the next trial of this matter, and there was testimony aided by photographs as to the condition of the Chevrolet Celebrity.
 {¶ 27} "The Court is not convinced that actual additional physical examination of the vehicle is necessary, and it is buttressed by the fact that this is a case which is not a specific-intent case, and as was cited by the Court previously in ruling on prior motions of the Supreme Court of the State of Ohio has found that the act of discharging a firearm in the vicinity of police officers is felonious assault.
 {¶ 28} "I realize what the Defendant's position is in regard to this matter. However, given the fact that there is testimony, there are photographs which are available, and given the nature of the charge, the lack of specific intent that is required in the mind of the Defendant, the Court denies the motion and counsel's objection is noted for the record." May 28, 2004 T. at 12-13.
 {¶ 29} We concur with the trial court's reasoning that the exculpatory value of examination of the Celebrity vehicle is merely speculative. We note a motion for preservation of the evidence was not made until after the first trial and nearly five months after indictment. Also, the vehicle in question was owned by a member of appellant's family. Therefore, an argument could be made the vehicle was accessible to appellant. Further, evidence of the bullet hole to the vehicle's window was elicited on direct testimony by actual witnesses and photographs, all of which were subject to cross-examination.
 {¶ 30} Appellant further challenges, in part, the trial court's precluding inquiry as to whether the investigating detective had spoken with the owner of the vehicle to inquire as to whether the damage (bullet hole) was new or old. While it may well have been error to preclude asking the detective whether he had spoken to the owner, any statement by the owner to the detective as to whether the damage was new or old would have been hearsay. Accordingly no prejudice accrued to the appellant.
 {¶ 31} Upon review, we conclude the trial court did not err in denying the motions.
 {¶ 32} Assignments of Error II and III are denied.
 IV {¶ 33} In the fourth assignment of error, appellant claims his convictions for having weapons while under disability and felonious assault were against the manifest weight of the evidence.
 {¶ 34} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also,State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 WEAPONS UNDER DISABILITY {¶ 35} Appellant was indicted and convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(4).
 {¶ 36} R.C. 2923.13 states:
 {¶ 37} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 38} "(1) The person is a fugitive from justice.
 {¶ 39} "(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
 {¶ 40} "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
 {¶ 41} "(4) The person is drug dependent, in danger of drugdependence, or a chronic alcoholic.
 {¶ 42} "(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section5122.01 of the Revised Code."
 {¶ 43} (Emphasis added.)
 {¶ 44} R.C. 2923.14 governs relief from disability:
 {¶ 45} "(A) Any person who, solely by reason of the person's disability under division (A)(2) or (3) of section 2923.13 of the Revised Code, is prohibited from acquiring, having, carrying, or using firearms, may apply to the court of common pleas in the county in which the person resides for relief from such prohibition."
 {¶ 46} * * *
 {¶ 47} Appellant argues the only evidence presented on this issue was a May, 2002 prior conviction for the same offense, the authenticity of which was stipulated to by defense counsel. T. at 575-576; Plaintiff's Exhibit 26. Appellant argues proof was not presented to show he was drug dependent or a chronic alcoholic at the time of the incident at issue. The State argues the May, 2002 plea and conviction in Carroll County was for the same offense, R.C. 2923.13(A)(4), and appellant did not prove he had been relieved of the disability.
 {¶ 48} While R.C. 2924.14 governs relief from disability imposed pursuant to R.C. 2923.13(A)(2) and (3), a review of the statute indicates R.C. 2923.14 is not applicable where a person is convicted of having a weapon while under disability pursuant to R.C. 2923.13(A)(4). We distinguish this case from those in which a defendant bears the burden of demonstrating relief from disability pursuant to R.C. 2923.14, and find appellant's previous conviction, in and of itself is insufficient evidence to support appellant's current conviction.
 {¶ 49} While appellant's prior conviction is relevant evidence which should be considered, the prior conviction alone is not sufficient to find appellant guilty of the offense in the case sub judice. The trial court failed to address the issue as to whether the disability which resulted in appellant's conviction in 2002, was still extant at the time of the incident in this case. Upon review of the record of the second trial, there is insufficient evidence demonstrating appellant was drug dependent, in danger of drug dependence, or a chronic alcoholic at the time of the alleged offense. Accordingly, we find the jury's verdict on this charge was against the manifest weight of the evidence.
 {¶ 50} Therefore, we sustain this portion of appellant's assignment of error relative to appellant's conviction for having weapons while under disability.
 FELONIOUS ASSAULT {¶ 51} Appellant was indicted and convicted of felonious assault in violation of R.C. 2903.11(A)(2) which states, "No person shall knowingly do either of the following: * * * Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 52} Appellant argues although it is true that he fired the weapon, proof beyond a reasonable doubt was not presented to establish he fired at or toward the police officers or anyone else with the knowing intent to cause physical harm.
 {¶ 53} Patrolman Marcus Brittain, Police Officer Jason Collins, Police Officer Eric Haynam and Sergeant Thomas Taylor testified appellant pointed at Officers Collins and Haynam and fired his weapon three times in their direction. Vol. I T. at 175-177, 190, 242-246, 250-251, 281; Vol. II T. at 7-13, 28-30, 38. The physical evidence substantiates the testimony of the four officers. The driver's side window of the vehicle parked at the end of the drive was shattered by a bullet. Vol. II T. at 48, 60. Both Officers Collins and Brittain testified Officers Collins and Haynam were standing by this vehicle when appellant fired at them. Vol. I T. at 190, 251, 281.
 {¶ 54} We find this evidence is sufficient to establish felonious assault. Appellant argues the audio from the videotape does not substantiate a three shot burst. However, the inconsistencies in the audio were explained by Detective Tim McCullough. Vol. II T. at 111. Further, the fact that Patrolman Charles Redleski did not hear the three shot burst was explained away by his location during the incident. He was behind the house talking to a neighbor. Vol. I T. at 212.
 {¶ 55} Upon review, we find substantial, competent credible evidence was presented to support the jury's guilty verdict on the felonious assault charges.
 {¶ 56} Appellant's fourth assignment of error is sustained, in part; and overruled, in part.
 {¶ 57} The judgment of the Court of Common Pleas of Stark County, Ohio is affirmed, in part; and reversed, in part.
Hoffman, J. Gwin, P.J., concur.
Farmer, J., dissents.